UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

HAROLD WAYNE NICHOLS, )
)
Petitioner, )
)
v. )          NO. 1:10-cv-147
)          *Mattice/Carter*
RICKY BELL, Warden, )
)
Respondent. )

## MEMORANDUM OPINION

Harold Wayne Nichols ("Nichols" or "Petitioner"), an inmate confined in the Riverbend Maximum Security Institution, brings this petition for a writ of habeas corpus, 28 U.S.C.§ 2254, challenging the legality of his confinement under a 1990 Hamilton County, Tennessee judgment convicting him of aggravated rape, petit larceny (reduced from grand larceny), and first degree burglary, entered pursuant to his guilty pleas, [Doc. 1]. For these offenses, Nichols is serving concurrent sentences of twenty-five years, two years, and six years, though he received a death sentence for the murder of another rape victim, as well as a total effective 225-year sentence for six other non-capital convictions. Warden Ricky Bell has filed an answer to the petition, which is supported by copies of the state court record, [Docs. 7, 11, 13, and 18, Addenda 1-8]. Petitioner has replied to the Warden's answer, [Doc. 22], and thus the case is ripe for disposition.

## I. Procedural History

Nichols's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA") and no further direct review was sought. *State v. Nichols*, No.

03C01-9108-CR-00236, 1995 WL 755957 (Tenn. Crim. App. Dec. 19, 1995). The trial court denied petitioner's subsequent application for post-conviction relief as to his convictions, but granted it with respect to his sentence. Nichols appealed the post-conviction court's decision, except for that part of the judgment requiring a new sentencing hearing, but likewise was unsuccessful in obtaining relief in the TCCA, *Nichols v. State*, No. E2008-0562-CCA-R3-PD, 2001 WL 55747 (Tenn. Crim. App. Jan. 19, 2001), or in the Tennessee Supreme Court. *Nichols v. State*, 90 S.W.3d 576 (Tenn. 2002). Nichols, who was resentenced on December 17, 2007, was not granted any relief on direct review of his resentencing in either state appellate court. *Nichols v. State*, E2008-00169-CCR-R3-CD, 2009 WL 2633099 (Tenn. Crim. App. Aug. 27, 2009), *perm. app. den*. (Tenn. 2010). On June 1, 2010, petitioner timely filed this instant habeas corpus application.

## II. Background

Proof was presented that, until Nichols's arrest in January, 1989, he roamed Chattanooga, Tennessee, at night, searching for vulnerable female victims, when he experienced a "strange energized feeling." *State v. Nichols*, 877 S.W.3d 722, 726 (Tenn. 1994). One of those women was S.T.,[1] who lived alone and who, on January 3, 1989, would become Nichols's last known victim. At 4:00 a.m. that day, Nichols went to her house in the East Ridge suburb of the City. S.T. had returned home at approximately 1:00 a.m. and had fallen asleep on her sofa. She was awakened by two sharp blows to her head and face. Nichols had entered through a window by climbing on top of her car. Petitioner held a knife to her throat and threatened to kill her if she did not comply with his

---

[1] As did the state court, this Court will refer to the victim by her initials.

instructions. He forced her to the bedroom, selected an outfit for her, and forced her to dress in it, all the while threatening her and hitting her. Nichols then forcibly ripped and cut off her clothing, cutting her leg in the process. Petitioner attempted to rape her anally, but was unable to do so. When she claimed to be nauseated, Nichols turned to get her a wash cloth, and she retrieved a .38 pistol she kept in the night stand. Nichols wrestled the gun away from her, beat her some more, and raped her anally, by force and with the threat of the knife held against her. When he finished, Nichols held the gun to her head and fired the empty chamber. Nichols forced her into the shower and left while she was showering, taking with him her purse and pistol. She called 911 at 4:43 a.m.

An investigation led police to Nichols and, late in the evening of January 5, 1989, he was taken into custody. On January 6, 1989, beginning at 12:47 a.m., Nichols gave a short statement admitting to the rape of S.T. to East Ridge police officers. Following his confession, police took Nichols to her house and he pointed out where and how he had climbed onto her car to get into the window. Thereafter, petitioner entered pleas of guilty to aggravated rape, petit larceny, and first degree burglary.

### III. **Standard of Review**

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) ( noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). Further, findings of fact which are supported by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. Discussion

The § 2254 petition for habeas corpus raises three grounds for relief: (1) in several instances, Nichols received ineffective assistance; (2) Nichols's motion to withdraw his guilty pleas was denied, though evidence of S.T.'s prior inconsistent statements was

4

disclosed only after the pleas; and (3) inordinate delay in re-sentencing him violated his rights to a speedy trial and to petition for redress.[2]

The Warden argues, in his response, that Nichols is not entitled to relief from the state court decisions rejecting his claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. Alternatively, the Warden suggests that petitioner has insufficiently pled his claim that counsel gave him ineffective assistance by failing to investigate other viable suspects. The Court agrees with respondent Warden that relief is unwarranted and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

Petitioner offers three main claims for review, each of which will be discussed individually.

## A. *Ineffective Assistance of Counsel, [Pet., Ground One].*

In his first claim, petitioner maintains that, in several instances, the attorneys who were appointed to represent him provided him with ineffective assistance.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668,

---

[2] The Warden, in his response, renumbered petitioner's claims as numbers 1-8—an an action which has proven cumbersome to the Court in reviewing the claims and which the Court strongly discourages in any of the Warden's future filings. The grounds for relief, numbered 1-3 in Nichols's § 2254 petition, will be addressed in that sequence.

687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating

claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.  Unless a defendant makes
> both showings, it cannot be said that the conviction . . .
> resulted from a breakdown in the adversary process that
> renders the result unreliable.

*Strickland* 466 U.S. at 687.   Petitioner has the burden of showing both deficient

performance and prejudice, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)—the latter

burden being quite a heavy one, *Williams v. Taylor*, 529 U.S. 362, 394 (2000).   In

considering the first prong of the test set forth in *Strickland*, the appropriate measure of

attorney performance is "reasonableness under prevailing professional norms." *Strickland*,

466 U.S. at 688.  A defendant asserting a claim of ineffective assistance of counsel must

"identify the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment."   *Id.* at 690.   The evaluation of the objective

reasonableness of counsel's performance must be made "from counsel's perspective at

the time of the alleged error and in light of all the circumstances, and the standard of

review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show that

counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel, even

if professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to establish "prejudice" within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, he would not have pled guilty but would have insisted on standing trial.[3] *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that, but for counsel's error, he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).

Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Hill*, 474 U.S. at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. Review of a *Strickland* claim under § 2254(d)(1) is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009), and a federal habeas court, reviewing such a claim must be wary of equating "unreasonableness under S*trickland* with unreasonableness under § 2254(d)." *Harrington*, 131 S. Ct. at 788. The question presented under § 2254(d), "is not

---

[3] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695.

whether counsel's actions were reasonable. . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Here, Nichols alleges that he received ineffective assistance from his attorneys, Lead Counsel Hugh J. Moore, Jr., and Co-Counsel Rosemarie L. Bryan. More specifically, petitioner asserts that his lawyers (1) failed to investigate the reliability of his statements taken under coercive and suggestive conditions; (2) failed to investigate evidence showing the gun found in Nichols's car was not the gun taken from the S.T. residence; (3) failed to investigate and inform their client about police records implicating another viable suspect, whom the victim first identified as her attacker and who was near the victim's home at the time of the crime, and to follow that same course of action with regard to other suspects; (4) had Nichols plead guilty before he was seen by the court authorized defense psychologist; and (5) failed to move to suppress Nichols's statements taken after he was illegally arrested, based solely on an anonymous tip, and coerced to confess. Finally, as sub-claims (6) and (7), Nichols maintains that, but for counsel's ineffectiveness, he would not have pled guilty and that his rape conviction was used to support the aggravating factor in his death penalty case. These last two sub-claims are intended, not as examples of deficiencies of performance, but as claims of prejudice, or even "extreme prejudice," resulting from such a sub-par performance. [Doc. 22, Petr.'s Reply at 3].

The assertions of fact which support the claims of ineffective assistance are contained in Nichols's reply, not his barebones petition. The section of petitioner's reply discussing the ineffective assistance claims is disorganized and the claims and arguments are intermingled and undifferentiated. Poor draftsmanship of the reply has caused the

Court to consume an unwarranted portion of its scarce resources in attempting to match the arguments with the individual claims to which the arguments correspond.

1. *Reliability of Nichols's Statements, [Doc. 22, Petr.'s Reply at 2-3, 5-12].*

In his reply, petitioner maintains that counsel failed to conduct a reasonable investigation into the circumstances of his confession to explore the possibility that the confessions were coerced or false; did not debrief Nichols to determine whether there was evidence of coercion during his interrogation; and did not investigate facts supporting a reasonable doubt defense. Petitioner further alleges that, though he was arrested as he was preparing to eat dinner, he was not allowed food until later the following morning; that at least six officers were present in the small interrogation room; that his request to call his wife was denied; that he was promised "help" and "treatment" if he cooperated by giving a statement; that, according to an expert's deposition testimony, there were significant examples of coercion which could have supported a suppression motion, but that no such a motion was filed; and that the circumstances surrounding the confession were likely to and did overbear Nichols's will to resist. Petitioner also asserts that the interrogation tactics employed with Scott Simcox, a person of interest in Nichols's cases, could have proved the coerciveness of the interrogation process used in the S.T. case.

When this claim was raised before the Tennessee Supreme Court, it found that

> trial counsel's investigation and defense were reasonably shaped by Nichols' confessions and statements to the non-capital offenses. Nichols confessed to the offenses involving ... S. T. . . ..
>
> Although the petitioner now argues that his trial counsel ... failed to challenge his confessions as false because they were given in a short period of time in response to leading questions

asked by police officers, we once again observe that he never refuted his confessions or his statements to his trial counsel and never provided a basis for a false confession defense. In addition, the record reveals that substantial evidence corroborated trial counsel's testimony. By entering guilty pleas for the offenses against S.T., for example, the petitioner acknowledged the evidence of his guilt, which included S.T.'s identification of him from a photograph and the finding of a pistol belonging to S.T. in his car. ....

In sum, the evidence at the post-conviction hearings did not establish the deficient performance of counsel given the petitioner's confessions and consistent statements of guilt. We conclude that trial counsel's representation did not fall below an objective standard of reasonableness ... in failing to challenge the confessions as false.

In addition, we agree with the Court of Criminal Appeals' conclusion that Nichols failed to show any prejudice under the second prong of the analysis. As we have discussed, the record reveals that Nichols confessed to the offenses against . . .S.T. and that he knowingly and voluntarily entered pleas of guilty to the offenses. In light of his confessions and consistent statements of guilt, as well as trial counsel's testimony that the petitioner was fully aware of the defense strategy and all of his options, it would be speculation to find from any of the evidence introduced at post-conviction that he would have proceeded to trial instead of pleading guilty.

*Nichols v. State*, 90 S.W.3d at 595-96.

Concluding, after a review of the record and applicable authority, that Nichols "was not denied his right to the effective assistance of counsel based on the failure to investigate and challenge his confessions as false," the state supreme court rejected this claim of ineffective assistance.

Respondent maintains that Nichols's ineffective assistance claim does not pass either of § 2254(d)'s tests and that, for this reason, the state court decision with respect to

the claim must remain undisturbed.  Petitioner counters that the decision does pass those tests because, first, the state court's adjudication of the claim was based upon unreasonable factual determinations.  There are four separate factual findings to which Nichols points as being unreasonably determined.  [Doc. 22, Petr.'s Reply at 9-10].

The first fact to which Nichols points as being unreasonably determined is "that the petitioner never refuted his confessions or his own statements to his trial counsel and others." This finding is undermined, in Nichols's view, by Dr. Ofshe's explanation "that a person who has falsely confessed 'has actually been persuaded that they probably committed a crime about which they know they have no knowledge,'" [*Id*. at 9]. Dr. Ofshe's statement relies on a presumption that a person has falsely confessed.  But any such a presumption, as it relates specifically to petitioner, has no basis in the record. Furthermore, Dr.  Ofshe's explanation, on its face, says absolutely nothing about whether Nichols repudiated his confession.  The record is devoid of evidence showing that Nichols actually renounced his confessions. To suggest otherwise is groundless.

The second state court factual finding to which Nichols takes exception is that he "has not attempted to explain how, in view of his continuing to assert that the confessions were true, trial counsel could have effectively presented a 'false confession' defense; or that the presentation of the false confession theory, as offered through Dr. Ofshe's testimony, would have been an effective defense."  Nichols claims that he did not continue to assert that his confessions were true, but the record shows otherwise, as even during his testimony in the trial of the capital case, he stuck by his prior admissions of guilt.

Nor has he shown that he could have presented an *effective* defense, (i.e., one that it would have produced "a decided, decisive or desired effect,"(Free Merriam-Webster Dictionary, see online at http://www.merriam-webster.com /dictionary/effective) (Internet materials as visited August 20, 2013, and available in Clerk of Court's case file)). True, petitioner theorizes that, by offering testimony by a false-confession expert, he could have shown that his confession was suspect, but he has offered no concrete facts to support that the presentation of such testimony, in the face of Nichols's adherence to his admissions of guilt, would have been tenable. *See, e.g., Davis v. McGuigan*, 325 S.W.3d 149, 170 (Tenn. 2010) (An expert's opinion as to "what is possible is no more valid that the [factfinders's] own speculation as to what is or is not possible.").

Nor does the record disclose any proof contravening factual finding number three (that Dr. Ofshe had not met Nichols) or factual finding number four (that no showing had been made concerning Nichols's susceptibility to suggestions and pressure, such that he might have been led into giving false confessions). While petitioner points to testimony concerning his impaired memory, significant memory loss, and disassociative experiences, he has not connected any of these impairments to his susceptibility to making a false confession. In short, nothing Nichols has offered supports the premise that state court's resolution of this claim was based on unreasonable determinations of the four cited facts.

Petitioner's next argument is that the state court unreasonably applied *Strickland* by applying one sentence in *Strickland* to decide this instance of ineffective assistance. The questioned statement from *Strickland* thus challenged is that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own

statements or actions."  According to petitioner, the state court used this tenet from *Strickland* to " insulate counsel from their absolute duty to independently investigate the circumstances of the confession," [Doc. 22, Petr.'s Reply at 11].  Nichols's allegation completely mischaracterizes the state court's decision.  The state court reasoned that

> "[t]he evidence showed that counsel and their investigator put thousands of hours into the investigation of the offenses and considered numerous issues and the viability of several possible defenses. They had numerous meetings and conversations with the petitioner, who was aware of and understood the evidence of his guilt and the strategy used in his defense. While the lens of hindsight indicates that trial counsel could have developed some of the issues more fully, . . . Nichols still confessed and the issues were fully litigated by the post-conviction trial court. In sum, as the trial court found, nothing at post-conviction established that trial counsel's representation fell below an objective standard of reasonableness . . . in failing to challenge the confessions as false when viewed in the context of the petitioner's own confessions and statements of guilt.

*Nichols*, 90 S.W.3d at 595.[4]

Clearly, the rationale underlying the state court's decision is not discordant with the guidelines set forth in *Strickland* and, thus, the state court did not unreasonably apply *Strickland* in finding that "trial counsel's investigation and defense were reasonably shaped by Nichols' confessions and statements to the non-capital offenses."  Petitioner's suggestion to the contrary is rejected.

Consequently, under the very onerous standard Nichols must meet to prevail on his ineffective assistance claim, it was not objectively unreasonable, under *Strickland*, for the

---

[4]  Though the quoted rationale was offered in connection with claims asserted in Nichols's capital case, the state court explained that the same rational applied equally to his confessions in S.T.'s case.  *Nichols*, 90 S.W.3d at 595.

state court to determine that counsel's alleged failure to investigate the reliability of Nichols's confession to the offenses against S.T. did not constitute a deficiency of performance and that there was no prejudice. *See Strickland*, 466 U.S. at 690, 694 (prejudice established by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different");*Harrington*, 131 S.Ct. at 786 (2011) (Section 2254(d) serves to protect "against extreme malfunctions of the state criminal justice system.") (citation omitted); *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (noting that habeas corpus review must utilize both the *Strickland* and § 2254(d) standards, the latter of which "sets forth a heavy burden for a petitioner to overcome").

2. *Failure to Investigate the Gun, [Doc. 22, Petr.'s Reply at 2-3, 13].*

Nichols's attorneys' next purported error was their failure to investigate evidence showing the gun found in Nichols's car was not the gun taken from the S.T. residence. In his reply brief, petitioner maintains that, during his guilty plea proceedings, trial counsel did not object to the prosecutor's recitation of the factual basis in which he stated that S.T.'s .38 pistol was found in Nichols's car, though police records, in the prosecutor's possession, showed that the gun found in the car was not the same gun which was owned by the victim.

In his appeal to the TCCA, petitioner alleged "that counsel were ineffective for failing to investigate the 'discrepancy' in the description of a pistol found in the trunk of his automobile." *Nichols*, 2001 WL 55747, at *30. In addressing the claim, the state court iterated senior counsel's testimony that they "worked on" the issue concerning "something contradictory" about a weapon in one of the cases and that junior counsel had testified that

the "gun that [post-conviction] counsel talked about was found" and that, when the prosecution tried to use the alleged value of the pistol "to try to make it a higher offense for the theft," she received permission to have it appraised which she did. *Id.*, 2001 WL 55747, at *31.

Concluding that the record disclosed that Nichols's attorneys were aware of the issue involving the pistol found in his car, that they had investigated the issue, and that evidence concerning the gun would have related only to the S.T.'s rape, to which petitioner had confessed and pleaded guilty, the TCCA did not find ineffective assistance and did not grant relief on this claim.

This claim was presented to the Tennessee Supreme Court and was addressed as follows:

> The petitioner argues that his counsel were ineffective for failing to investigate that a pistol recovered from the trunk of his car did not match the description of a "blue steel revolver" used in the offense against S.T. The record reflects that Nichols confessed to the offense against S.T. and entered a guilty plea; before the plea was entered, the prosecutor stated that S.T. had identified Nichols from a photograph and that Nichols had consented to a search of his car that revealed a .38 revolver belonging to S.T.
>
> According to Dwight Short, a witness presented at the post-conviction hearing by the petitioner, a property sheet prepared by police officers indicated that the pistol was an "Auto SST," which he interpreted to mean a stainless steel automatic. Short also testified, however, that the serial number recorded for the pistol on the property report was traced to a "three inch .38 Rossi revolver with a blue finish."

Though the state supreme court did not make a specific finding with respect to the issue, it concurred with the TCCA that the evidence did not establish any deficiency of

performance on the part of the defense attorneys, given Nichols's confessions and consistent statements of guilt, nor any prejudice, in view of his confession and guilty pleas to the crimes against S.T., the latter of which were entered knowingly and voluntarily.

When a state court decides a claim without offering an explanation for its decision, a federal court must perform a deferential review of "the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

As the testimony of petitioner's witness at the post-conviction hearing disclosed, the property report recorded the weapon recovered from Nichols's vehicle as an "Auto SST." The witness explained that the "Auto" nomenclature indicated "automatic or semi-automatic" and the "SS" stood for "stainless steel," [Addendum 3, vol. 11, Test. of Dwight Short at 1494-95].   While the witness stated that he would not expect to see the word "Auto"  and then the initials "SS" on a blue steel revolver, he conceded, on cross examination, that he had run a trace on the serial number of the weapon and that the trace identified the weapon as a three-inch .38 Rossi revolver with a blue finish. [*Id*. at 1495].

The record supports the state court's ultimate determination that counsel did not render deficient assistance by failing to challenge what appears to be nothing more than an error of  transcription on the part of the officer who inventoried the evidence seized from the trunk of Nichols's vehicle.  Likewise the record supports that no prejudice ensued as a result of counsel's failure to raise the issue, since the serial number trace identified the weapon in question as a 38. Rossi revolver with a blue finish—the same caliber of weapon involved in S.T.'s rape.

At any rate, petitioner has offered no developed argument to show how the state courts' disposition of the claim was contrary to or an unreasonable application of *Strickland* or based on an unreasonable factual determination, and this Court does not perceive any reason to find that it was any of these things. Absent such a showing, or such a finding, habeas corpus relief is unwarranted on this claim.

3.  *Other Suspects, [Doc. 22, Petr.'s Reply at 2-3, 14-18].*

The third asserted instance of ineffective assistance is that counsel failed to investigate and inform Nichols that police records implicated other legitimate suspects. In his reply, Nichols fleshes out his claim by asserting that there were three viable suspects whom counsel failed to investigate—the prime suspect, Fred Coats, along with suspects Phillip Redwine and Jim Snow. According to Nichols, Coats was first identified by S.T. and another victim as their attacker and a police dog tracked a scent from her house in the direction of a parking lot where Coats' mother's vehicle was parked. Phillip Redwine, it is claimed, had shaved off all his body hair when the police attempted to secure hair samples, and Jim Snow was convicted of the attempted rape of the sister one of the victims.

Petitioner maintains that counsel minimized the importance of the other suspects and, crediting a police officer's explanation that there was nothing to the suspicious actions of the suspects, did not evaluate themselves the evidence for any potential exculpatory value and did not use the evidence "to sew the seeds of reasonable doubt concerning [their] client's guilt," [Doc. 22, Petr.'s Reply at 16].

In his response, the Warden first argues that the claim is insufficiently pled, given petitioner's failure "to specify which 'other viable suspects' counsel failed to discover in

police records and inform Nichols of," [Doc. 7, Resp.'s Answer at 49]. However, the argument was made before petitioner filed his reply, which more fully fleshed out his claim, and, as a consequence, corrected the inadequacies in his claim. The Warden maintains, alternatively, that the state court's adjudication of the claim must be given AEDPA deference under § 2254(d).

This claim was raised in the TCCA and in the state supreme court during the post-conviction appeals. In the TCCA, Nichols argued that his attorneys "could have established reasonable doubt through some of the other persons investigated for the rapes." The state court rejected this claim, finding that the record revealed that the attorneys had "dealt with this issue in their representation of the petitioner." For example, during a hearing in early 1990, lead trial counsel questioned a police officer concerning identifications by two or more victims of a Mr. Coats. Also, at the trial involving another rape victim (P.R.), the victim testified about her misidentification of Coats, explaining that, when she saw Coats's photograph, he shared a lot of features in common with the rapist, but that when she viewed Coats in a line-up several days later, she told the police that he was not the perpetrator.

Further, lead trial counsel testified, during the post conviction hearing, that he was certainly aware of the Coats matter, and co-counsel testified that she had checked the records of some of the persons who had been investigated regarding the rapes, including Mr. Redwine, but had found nothing suggesting he was the offender in the murder case. Co-counsel stated that she had also discussed other suspects with an officer and, when necessary, corroborated information with him. Moreover, counsel stated that there was no

18

evidence which would have shown any "reasonable doubt," and that, if such evidence had existed, it would have been pursued.

Affording the defense attorneys the strong presumption that their conduct fell within the wide range of reasonably professional assistance, the TCCA found that Nichols had not shown otherwise. As to prejudice, the state court found, in view of the detailed confessions and other proof, that even if counsel had offered the arguments which petitioner alleged would have established reasonable doubt, there was no reasonable probability of a different outcome.

As noted, the claim was also presented to the Tennessee Supreme Court, which recounted that lead counsel had stated that the investigation of other suspects "did not seem fruitful." *Nichols*, 90 S.W.3d at 592. The highest state court likewise observed that co-counsel had testified that Nichols had made vivid and greatly detailed admissions against himself and had described details that only the perpetrator and the victims would have known.

Here, according to the testimony of Nichols's counsel, they investigated other individuals, talked to the police about those individuals, but found no evidence that suggested that the offenses were committed by someone other than Nichols, so as to support a theory of reasonable doubt. Counsel has no duty to continue with an investigation which will be unproductive. *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (recognizing that no further investigation need be done where counsel uncovers evidence suggesting that it would be fruitless); *Hamilton v. Ayers*, 583 F.3d 1100, 1129 (9th Cir. 2009) (observing that "the duty to investigate and prepare a defense is not limitless" and "does not necessarily require. . . that counsel must pursue every path until it bears fruit or

until all conceivable hope withers") (internal quotation marks omitted); *Mandacina v. United States*, 2001 WL 876924, *2 (W.D. Mo. July 25, 2001) ("Given the demands placed upon trial counsel facing a murder trial, it cannot be expected that counsel will doggedly investigate every conceivable suggestion that maybe someone else was (also?) involved.").

Nor does an attorney's mere reliance on a police detective in assessing whether to proceed with an investigation of another suspect constitute a prejudicial performance. *See Hodge v. Haeberlin* 579 F.3d 627, 650-651 (6th Cir. 2009) (no deficient performance or prejudice where counsel failed to investigate a potential alternative suspect because a detective had pursued that lead "until it proved to be a dead end"). This is especially true, where the police "received and pursued hundreds of tips, questioned over 100 people, and investigated numerous possible suspects," *Nichols v. Heidle*, ___ F.3d. ___, ___, 2013 WL 3821537 (6th Cir. July 25, 2013), and where duplication of those efforts by defense counsel would have been virtually impossible, given the other demands on counsel's time and resources in preparing petitioner's cases for trial or for guilty pleas.    And it must be noted that, while Nichols claims that but for counsel's asserted ineffectiveness, he would not have agreed to plead guilty, he has failed to describe any additional evidence which would have supported a reasonable doubt defense and which would have been discovered had counsel conducted a more thorough investigation into the other suspects.

Finally, petitioner's contention that the determination regarding his ineffective assistance claim must be measured against the fact that he was facing the death penalty in the capital case and "that there was no worse outcome than a conviction in that case," [Doc. 22, Petr.'s Reply at 18-19], is not the standard for evaluating such a claim.  Arguing that there could be "no worse outcome" is substantially similar to arguing that petitioner had

nothing to lose. *Strickland* does not support that an attorney renders ineffective assistance by abandoning a claim in a death penalty case because there was nothing to lose. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims.").

The Supreme Court has observed that "[a]n attorney can avoid activities that appear distractive from more important duties [and is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S.Ct. at 789. Given that the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Renico v. Lett*, 599 U.S. 766, __, 130 S. Ct. 1855, 1862 (2010) (citations omitted), and in view of the onerous standard which must be met to prevail on an ineffective assistance claim under the AEDPA, *see Harrington*, 131 S.Ct. at 788, the Court finds that relief is unwarranted here because the state appellate courts's rejection of petitioner's claim of ineffective assistance was not an unreasonable application of nor contrary to *Strickland* and because the state court did not unreasonably determine the facts placed before it.

4. *Precipitous Guilty Plea*, *[Doc. 2, Petr.'s Reply at 12]*.

In this claim of attorney error, petitioner asserts that he had a pretrial competency and sanity evaluation, indicating that further investigation into mental health status was warranted. That evaluation put counsel on notice that his client could have "intense, often un-controlled, destructive impulses" that "may be handled in a variety of ways," but that he did not have insight or awareness of this emotional state. In addition, there were

"substantial indications of significant immaturity and some schizoid features," [Doc. 22, Petr.'s Reply at 12]. Instead of exploring these leads further, counsel pled Nichols guilty in October of 1989, before he was examined by the court-authorized defense psychologist.

When questioned concerning this matter during the post-conviction evidentiary hearing in the trial court, Co-counsel Bryan explained her reasoning for having Nichols plead guilty to the S.T. rape before having him examined by a defense psychologist, [Addendum 3, vol. 6, Evid. Hr'g Tr., Bryan test. at 620-21]. She testified that she had met with one of the State's mental health experts who was evaluating Nichols and had discussed with the expert, at great length, the Rorschach test and every other test administered to Nichols, in order to understand the expert's forthcoming conclusions as to her client's mental state. The expert told her that Nichols was "not mentally ill" and that nothing showed that Nichols was mentally ill, though admittedly one test had revealed evidence of a "potential explosiveness or an inability to control himself." Nonetheless, the expert had opined that this "potential explosiveness" test result was "nothing" and, even though Ms. Bryan stated that she could not recall the "exact scientific analysis" used by the expert, that the result did not indicate what she hoped it would indicate. The trial court did not find ineffective assistance in this regard.

This alleged attorney error was raised in the post-conviction appeal in the TCCA, but the error was presented to show that counsel provided ineffective assistance by failing to challenge Nichols's confessions as unreliable, [Addendum 6, Doc. 1, Petr.'s Post-Conviction App. Brf. at 81, 86-88]. Indeed, petitioner argued in his appellate brief that this shortcoming on the part of trial counsel, combined with other alleged shortcomings, "contribute to the failure to investigate the possibility of a false confession which would

have uncovered the vast quantity of exculpatory, reasonable doubt evidence presented at the post-conviction hearing," [*Id.* at 88]. Thus, the state courts addressed the issue as it was raised: within the context of the purported false-confession and reasonable doubt errors.

The Court's review of this alleged attorney shortcoming likewise has been conducted within the perimeters of the first claimed attorney error (counsel's alleged failure to challenge the reliability of Nichols's confession). For the reasons set forth in the discussion of the false-confession claim, habeas corpus relief is not justified with respect to this claim either.

5. *Illegal Arrest Claim, [Doc. 22, Petr.'s Reply at 2-5, 12].*

Petitioner argues, in his fifth claim of ineffective assistance, that counsel did not move to suppress his statements on the ground that they were made after he was illegally arrested, based solely on an anonymous tip. According to Nichols, the anonymous caller identified Nichols to a police investigator, said he fit the description of the rapist published in the newspaper, and stated that Nichols worked at Godfather's Pizza. Petitioner asserts that since the record shows that no victim identified him before his arrest and since the uncorroborated, unsworn speculation of an anonymous caller does not provide probable cause, counsel gave ineffective assistance by failing to challenge the arrest as illegal.

Respondent maintains that this claim was raised in the state supreme court, quotes extensively from the state court's opinion, and asserts, without any developed argument or analysis, that state court's subsequent adjudication of the claim is not an unreasonable application of the governing legal standard.

In addressing the issue, the state supreme court first observed that the post-conviction court had determined that trial counsel should have pursued the issue more fully and had also noted that some of the photo identifications, apparently, had been made after Nichols's arrest, but found that this did not establish that none of the identifications had occurred prior to the arrest. The post-conviction court had also pointed out that the records referred to some pre-arrest identifications, that no victims were called during the post-conviction hearing to ask when they made the identifications of petitioner, and that Nichols had failed to show any prejudice, as he had not established the lack of any pre-arrest identifications.

Citing to proof contained in the record, such as trial testimony and a police report stating that the anonymous tip led to a computer check which, in turn, led to the discovery of Nichols's prior arrest for a sex offense and that a victim identified him from a mug shot, which supported the lower court's factual findings (i.e.,that petitioner had been identified before his arrest), the state supreme court concluded that, based on those factual findings, there was no showing of any deficiency on the part of counsel.

Nichols challenges the state courts' factual finding that there is evidence in the record showing that Nichols had been identified before his arrest. Recall that a state court's finding of fact must not be disturbed unless it is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, § 2254(d)(2), or unless a petitioner provides clear and convincing proof to refute it.

The record contains an offense report, dated January 6, 1989, prepared by the East Ridge Police Department, which states that officers received an anonymous tip on January 5, 1989, which led to a computer check and, thence, to the discovery of Nichols' prior

arrest for a sex offense, (Addendum 4, Ex. 49, vol. 1, East Ridge Police Department Offense Report Supplement). The police report indicates that, prior to Nichols's arrest, a victim identified him from a photograph as the perpetrator of the offense against her and that she was the "fourth victim in a row" to make such an identification.

Nichols argues that the record does not support that he was identified by S.T. before his arrest, but supports, instead, that she identified him on January 6th, the day after he was arrested, from Polaroid photographs taken on that same day by a police officer. Petitioner cites to the testimony of the officer and to the testimony of one of the victims as support for his assertions.

However, the cited testimony of the victim in another rape committed by Nichols shows that, when the victim was viewing the photo line-up consisting of what "looked like Polaroid pictures," a detective explained that, in making an identification, she should take into consideration that some of the photos she was viewing could be five years old, [Addendum 1, vol. 15, p. 150]. The rape of that particular victim occurred on January 3, 1989, [*Id*. at 120] and any photographs in the line-up which were five years old would have been taken in early 1984.

While Nichols may speculate that his identification was based on a Polaroid photograph taken on January 6th, nothing in the cited portion of the record contains actual proof that this is what happened. Indeed, the TCCA noted that petitioner had underscored ambiguities which existed in the record but went on to find that he had failed to demonstrate what he must: the lack of any pre-arrest identifications. And again, as the state court noted, Nichols did not call any of the victims to testify during his post-conviction hearing as to the date they made their respective identifications.

All in all, the Court concludes that the cited portions of the record do not undercut the state court's reasonable factual determination that Nichols failed to establish that no pre-arrest identifications had been made. Petitioner's argument to the contrary is rejected.

A petitioner who charges his attorneys with ineffective assistance of counsel based on their failure to pursue a Fourth Amendment claim, must show first that the underlying Fourth Amendment claim had merit. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, based on the factual finding that a victim made a pre-arrest identification of Nichols based on a photograph, there was no Fourth Amendment violation since that identification provided probable cause for his arrest. Because Nichols's arrest was supported by probable cause, counsel did not give ineffective assistance by failing to move to suppress his client's statements based on an arrest lacking probable cause.

Because petitioner did not show that he received ineffective assistance of counsel in this regard, the state court did not unreasonable reject the instant claim.

*6. and 7. Prejudice Claims, [Doc. 22, Petr.'s Reply at 3, 18-19].*

Nichols maintains that, but for counsel's ineffectiveness, he would not have pled guilty and further maintains that his rape conviction was used to support the aggravating factor in his death penalty case. These last two sub-claims are offered, not as examples of deficiencies of performance on the part of trial counsel, but respectively as claims of prejudice and "extreme prejudice," [Doc. 22, Petr.'s Reply at 3]. An allegation of prejudice necessarily must be tied to an allegation of a deficient performance

Furthermore, the fact that the rape conviction was used to support an aggravating factor in Nichols's later capital case would only be a valid claim of a prejudicial performance if it were consonant with *Strickland*'s instruction to consider the circumstances

at the time of the alleged attorney error in evaluating an ineffective assistance claim. *See Strickland*, 466 U.S. at 689 ( cautioning courts " to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Certainly, a later-occurring capital trial is not a circumstances which existed at the time of counsel's claimed shortcoming in a non-capital case and could not be considered in assessing whether counsel's representation was constitutionally lacking.

Having found that the state court's adjudication of the previously alleged attorney errors, discussed earlier in this opinion, *see supra*, sections A.1.-A.5., was neither contrary to *Strickland*, not an unreasonable application of the precedent, and not based on an unreasonable factual determination, these claims of prejudice, which are not anchored to any claims of deficient performance, must likewise fail.

## B.  *Withdrawal of the Guilty Pleas, [Pet., Ground Two].*

In the second main claim raised in his pleading, Nichols asserts that the trial court refused to allow him to withdraw his guilty pleas, despite the fact that evidence of S. T. 's inconsistent statements was withheld from him prior to those pleas and disclosed only after the pleas were entered, in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.  According to Nichols, after he pleaded guilty, the prosecutor disclosed a taped statement and a typewritten statement of the victim, which had not been previously provided to counsel and to which he had no access.  These two statements, so he argues, are inconsistent with the version of the victim's statement which was disclosed to the defense prior to the entry of the pleas.  The inconsistencies showed that Nichols could not have, as charged,"deliberately, premeditatedly, maliciously and with malice aforethought assaulted the victim" with the intent to kill.  Had the attorneys for the

defense been aware of this evidence, they would not have advised Nichols to plead guilty and Nichols would not have pled guilty.

The claim was pressed on appeal to the TCCA, which noted that "[t]here was a variance between the tape recorded statement given by the victim and provided to the defense and her typewritten statement which was part of her victim's compensation claim which was filed before the Tennessee Claims Commission, which the state did not provide to him prior to the entry of his guilty plea." *Nichols*, 1995 WL 755957 at *8. The TCCA then went on to find that the claim had no merit because the "inconsistency related to the charge of felonious assault which was dismissed as part of [petitioner's] plea bargain agreement." *Id.* at *9.

The law is clear. Where state courts have spoken on a matter of state law, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A decision, which rests entirely on state law, generally is not of federal concern. *See e.g., Swarthout v. Cooke*, __ U.S. __, __, __, 131 S. Ct. 859, 861, 178 L. Ed.2d 732 (2011) (claims which allege a state law error or an incorrect application of state law do not present cognizable issues for federal habeas review).

More specifically, a petitioner's allegation that a state court has rejected a motion to withdraw a guilty plea law does raise a constitutional question. *See e.g., Perotti v. Morris*, 1991 WL 15995, *1 (6th Cir. Feb. 8, 1991); *Carwile v. Smith*, 874 F.2d 382, 385 (6th Cir. 1989); *U. S. ex rel. Rosa v. Follette*, 395 F.2d 721, 722 (2d Cir. 1968); *Carter v. Warden, Chillicothe Correctional Inst.*, 2012 WL 2601760, *12 (S.D.Ohio July 5, 2012) (listing cases). Such matters are governed by Tennessee state law. *State v. Phelps*, 329

S.W.3d 436 (Tenn. 2010) (applying Tenn. R. Crim. P. 32(f) to plea-withdrawal claim). Of course, if it appears that an error under state law at the same time violated the federal right to due process, the Court could entertain the federal claim. *Estelle*, 502 U.S. at 68. Nothing alleged in the pleadings or discerned by this Court discloses any such due process violation. Because this claim does not allege a violation of federal constitutional law, it provides no cognizable basis for habeas corpus relief.

**3.** *Speedy Trial Claim, [Pet., Ground Three].*

In Nichols's last ground, he asserts that the inordinate delay in resentencing him, following his success on a sentencing issue in the post-conviction court, violated his right to a speedy trial under the Sixth and Fourteenth Amendments and further resulted in a violation of his First Amendment rights under the Petition Clause by denying him federal review. In support of this ground, Nichols further maintains that he formally asserted his right to a speedy re-sentencing proceeding just three months after counsel was appointed. Petitioner maintains that the length of delay was inordinate; caused by either negligence or bureaucratic indifference on the part of the State; and worked to deny him federal review of counsel's performance with respect to aggravating factor in his capital case because his sentence had not been imposed in this case.

The Warden asserts, in his answer, that Nichols cannot be granted relief, as he has failed to show that the state court unreasonably applied the relevant Supreme Court precedent in rejecting this claim or that its decision was based on an unreasonable determination of the facts placed before that state court.

When Nichols presented his claim to the TCCA, the state appellate court, citing to *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), described the

factors to be weighed to determine whether a defendant's speedy-trial right has been violated. *Nichols v. State*, 2009 WL 2633099, *5 (Tenn. Crim. App. Aug. 27, 2009). They included: the length of the delay, the reasons for the delay, the assertion of the right, and any prejudice to the defendant in light of the facts and circumstances of the particular case. The TCCA noted that a delay which approaches one year is presumptively prejudicial and triggers an analysis of the remaining factors. The state appellate court identified the delay as being from October 7, 2002, when the state supreme court remanded the non-capital cases for resentencing, to April of 2006, when the State initiated resentencing proceedings (i.e., approximately three years and six months). The TCCA then found the delay, implicitly, to be presumptively prejudicial, and went on to weigh the remaining factors.

The TCCA found that petitioner did not assert his right to a speedy trial in state court until May of 2007, and weighed this factor in favor of the State. The state court also considered Nichols's assertion that the State delayed the resentencing in order to gain a tactical advantage over his ability to collaterally attack his capital and noncapital convictions in federal court. After examining the allegations, the supporting arguments, and the district court's opinion issued in Nichols's capital habeas corpus case, the TCCA found that petitioner might well have shown negligence or bureaucratic indifference, but that he had "failed to establish any tactical advantage gained by the State by delaying the resentencing hearings in the noncapital cases." *Id*., 2009 WL 2633099, at *8, *10. The state court also quoted excerpts from the district court's opinion, in which claims involving the noncapital cases were dismissed because the judgment being attacked in the federal habeas proceedings was the capital case and because issues involving the Nichols's noncapital cases were not cognizable claims. Nonetheless, given the "inordinate" length

of the delay, this factor was counted in petitioner's favor, though it was not afforded "the same amount of weight or consideration as an intentional or deliberate delay purposely caused for improper purposes." *Id*. at *10.

Next, the TCCA addressed Nichols's contentions concerning the prejudice factor, which it observed was the most important factor in the *Barker* analysis. The state court began by highlighting petitioner's acknowledgment that he was currently in custody serving an effective sentence of 225 years in unrelated cases and was also awaiting execution of a death sentence. Based on these acknowledgments, the TCCA concluded that Nichols's level of anxiety as to the sentence he would receive in the noncapital cases would have been negligible.

The state court found that petitioner was resentenced to the minimum sentence for each count of the indictment in the noncapital cases, for an effective sentence of twenty-five years, with each sentence to be served concurrently. It then rejected any claim that the delay impeded Nichols's ability to defend himself during the resentencing hearing, as well as any claim that the delay caused him to be unduly imprisoned, given that the sentence he received at the resentencing hearing did not exceed the effective sentence imposed in the other noncapital cases.

The TCCA then turned to Nichols's allegation that he had been prejudiced by an incomplete federal review of the habeas corpus petition in his capital case. The state court again examined the district court's opinion issued in Nichols's capital habeas corpus case and found that the federal court's dismissal of claims involving his noncapital cases was not attributed to any delay in resentencing. This factor weighed against petitioner. Based

on its weighing of the factors, the state appellate court concluded that Nichols's right to a speedy trial had not been violated and that relief was unjustified.

As the TCCA observed, the appropriate analysis for determining whether a defendant's right to a speedy trial has been denied is enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972), which requires the Court to apply a four-factor balancing test, which, in turn, weighs the conduct of both the prosecution and the defendant. *Id*. at 521. Because the state court relied on *Barker* as supplying the governing legal principle to a speedy-trial claim, its decision is not contrary to the well established rule in a Supreme Court case. *Vermont v. Brillon*, 129 S. Ct. 1283 (2009) (applying *Barker* to review of speedy trial claim); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) (same in § 2254 case); *Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003) ("The determination of whether pre-trial delay violates the Sixth Amendment is governed by *Barker v. Wingo* . . . .").

Here, the TCCA treated the delay of well over three years as sufficiently prejudicial to invoke a weighing of the remaining *Barker* factors. The factor involving the reason for the delay weighed slightly in petitioner's favor, due to the inordinate length of the delay. Nichols's assertion of the right to a speedy trial occurred in May 2007; the resentencing occurred in December 2007; and the subsequent delay, according to the TCCA, "was the result of [petitioner's] request for continuances." *Nichols*, 2009 WL 2633099, at *7. This rights-assertion factor fell, so the TCCA determined, on the State's side. And as discussed, the prejudice factor fell solidly on the State's side.

Under 28 U.S.C. § 2254(d), '[w]hen assessing whether a state court's application of federal law is unreasonable, the range of reasonable judgment can depend in part on

the nature of the relevant rule that the state court must apply." *Renico*, 130 S. Ct. at 1864 (citation and internal quotation marks omitted). The speedy-trial right "is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521. Also "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530.

In recognition of the "leeway [state] courts have in reaching outcomes in case-by-case determinations," when applying general legal rules, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), such as *Barker*'s speedy-trial analysis, this Court finds that the TCCA's rejection of Nichols's claim was neither an unreasonable application of *Barker* nor based on an unreasonable determination of the facts presented to the state courts. No writ will issue.

As to Nichols's claim that his right to petition the courts under the First Amendment was violated by the inordinate delay in resentencing him, the Court has examined his filings in the TCCA and the Tennessee Supreme Court when he appealed his resentencing, (Adendum 8, Docs. 1, 3). This examination has not revealed that petitioner offered the same or a similar claim to the state appellate courts. Therefore, since Nichols cannot return with this claim to the state courts, given that the state post-conviction statute of limitations bars any further review, he has committed a procedural default of this particular issue. Petitioner offers nothing by way of cause and prejudice and federal habeas review is likewise barred by his unexcused procedural default. *See, e.g.,Friedman v. Smith*, 83 Fed.Appx. 718, 722, 2003 WL 22976586, *4 (6th Cir. Dec. 5, 2003) ("[A] federal habeas

33

court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense.") (quoting *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)).

## V. <u>Certificate of Appealability</u>

Finally, the Court must decide whether to issue a certificate of appealability (COA). A petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude that the disposition of those claims was debatable or wrong. Because Nichols has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.


**ENTER**:

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
